**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No:** Case: 1:21−mj−00499 |
| | : | Assigned To : Harvey, G. Michael |
| **v.** | : | Assign. Date : 6/25/2021 |
| | : | Description: Complaint w/ Arrest Warrant |
| **JONATHAN DANIEL POLLOCK,** | : | **VIOLATIONS:** |
| | : | |
| | : | **18 U.S.C. §§ 111 (a) and (b), and 2** |
| | : | **(Assaulting, Resisting, or Impeding** |
| **JOSEPH DANIEL HUTCHINSON III,** | : | **Certain Officers or Employees; Aiding** |
| | : | **and Abetting)** |
| | : | |
| **JOSHUA CHRISTOPHER DOOLIN,** | : | **18 U.S.C. § 641** |
| | : | **(Theft of Government Property)** |
| | : | |
| **MICHAEL STEVEN PERKINS, and** | : | **18 U.S.C. § 1752(a)(1), (2), and (4)** |
| | : | **(Restricted Building or Grounds)** |
| | : | |
| **OLIVIA MICHELE POLLOCK,** | : | **40 U.S.C. § 5104(e)(2)(E) and (F)** |
| | : | **(Violent Entry and Disorderly Conduct)** |
| **Defendants.** | : | |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**
**AND ARREST WARRANT**

I, Timothy D. Taylor, being first duly sworn, hereby depose and state as follows:

**PURPOSE OF AFFIDAVIT**

1.      I make this affidavit in support of an application for arrest warrants for

JONATHAN DANIEL POLLOCK, JOSEPH DANIEL HUTCHINSON III, JOSHUA

CHRISTOPHER DOOLIN, MICHAEL STEVEN PERKINS, and OLIVIA MICHELE

POLLOCK.

1

## AGENT BACKGROUND

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and, as such,

am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure

41(a)(2)(C).  I joined the FBI as an Intelligence Analyst in 2008, and then became a Special Agent

in August 2010.  I am currently assigned to the FBI's Tampa Division Joint Terrorism Task force

("JTTF"), working in Lakeland, Florida.   My official duties include, but are not limited to,

investigating individuals and groups who have committed violations of federal laws, including

federal laws related to threats, international terrorism, and domestic terrorism.  As a special agent,

I have participated in numerous investigations and have executed both arrest and search warrants.

3.      I am one of the investigators assigned to an ongoing investigation by the FBI,

United States Capitol Police ("USCP"), Metropolitan Police Department ("MPD"), and other law

enforcement agencies, of riots and civil disorder that occurred on January 6, 2021, in and around

the United States Capitol grounds. Since I became involved in this investigation on January 6,

2021, I have conducted interviews, reviewed public tips, reviewed publicly available photos and

video, and reviewed relevant documents, among other things.

4.      The facts in this affidavit come from my review of the evidence, my personal

observations, my training and experience, and information obtained from other law enforcement

officers and witnesses. Except as explicitly set forth below, I have not distinguished in this

affidavit between facts of which I have personal knowledge and facts of which I have hearsay

knowledge. This affidavit is intended to show simply that there is sufficient probable cause for

the requested warrant and does not set forth all of my knowledge about this matter.

2

## BACKGROUND

5.      The United States Capitol is secured 24 hours a day by security barriers and USCP occupy various posts throughout the grounds. Restrictions around the United States Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the United States Capitol. On January 6, 2021, the exterior plaza of the United States Capitol was also closed to members of the public.

6.      On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, located at First Street SE, in Washington, D. C. During the joint session, elected members of the United States House of Representatives and Senate met in the United States Capitol to certify the vote count of the Electoral College for the 2020 Presidential Election, which took place on November 3, 2020.  The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Michael R. Pence was present and presiding, first in the joint session, and then in the Senate chamber.

7.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the United States Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the United States Capitol building and USCP were present, attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

8.      At such time, the certification proceedings were underway, the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the U.S. Capitol Police

3

attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

9. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

10. During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the United States Capitol building without authority to be there.

## STATEMENT OF FACTS SUPPORTING PROBABLE CAUSE

### A. The Defendants

11. Based on my review of publicly available video footage, USCP surveillance footage, and body worn camera ("BWC") footage of officers that responded to the Capitol on January 6, 2021, I have identified a group of individuals who appear to have moved together from the Washington Monument to the Capitol grounds on the afternoon of January 6, 2021. That group includes individuals who were later identified as Jonathan Daniel Pollock ("JONATHAN POLLOCK"), Joseph Daniel Hutchinson III ("HUTCHINSON"), Joshua Christopher Doolin

("DOOLIN"), Michael Steven Perkins ("PERKINS"), and Olivia Michele Pollock ("OLIVIA
POLLOCK").

### 1.    JONATHAN DANIEL POLLOCK

12.    On January 21, 2021, the FBI Washington Field Office ("WFO") opened a file on
an unknown male subject who would later be identified as JONATHAN POLLOCK.  WFO
posted to the Internet a "Be on the Lookout" ("BOLO") for the individual (at the time referred to
as Unknown Subject ("UNSUB") #144), depicted below:



13.    On March 17, 2021, I conducted a telephone interview with a witness ("Witness-
1"), who worked with JONATHAN POLLOCK until January 2021 in the Lakeland, Florida area.
Witness-1 informed me that Witness-1 believed that UNSUB #144 was JONATHAN
POLLOCK and that JONATHAN POLLOCK had taken several weeks off of work in January
2021 in order to travel to Washington D.C. with his family.  When JONATHAN POLLOCK
returned to work, he used his cell phone to show photos of himself at the Capitol, including the
images in paragraph 14 below, and to brag to his coworkers about having been on the news.  On

the second day after JONATHAN POLLOCK returned to work, JONATHAN POLLOCK

reported that he had a "family emergency," left the worksite, and did not return again.  One of

JONATHAN POLLOCK's coworkers ("Coworker-1") was sent to JONATHAN POLLOCK's

home address, to recover keys and items belonging to the company.  Coworker-1 told Witness-1

that JONATHAN POLLOCK's father answered the door, showed Coworker-1 JONATHAN

POLLOCK's keys and phone, and stated he did not know where JONATHAN POLLOCK was.

14.     I showed the images below, which are from video footage of the January 6, 2021

breach of the Capitol, to Witness-1:



Witness-1 identified the individual depicted in these images as JONATHAN POLLOCK.

15.     I also interviewed another individual who worked with JONATHAN POLLOCK

until January 2021 ("Witness-2").  Witness-2 also identified the images in paragraph 14 as

JONATHAN POLLOCK.  Shortly after JONATHAN POLLOCK left the worksite, as described

in paragraph 13, Coworker-1 asked Witness-2 if Witness-2 had "hear[d] about Johnny," referring

to JONATHAN POLLOCK.  Coworker-1 then showed Witness-2 several open source

photographs of the January 6, 2021 breach of the Capitol, in which JONATHAN POLLOCK was depicted.

16.     Based on my review of  publicly available video footage, USCP surveillance footage, and BWC footage of officers that responded to the Capitol on January 6, 2021, I have observed that, on January 6, 2021, JONATHAN POLLOCK was wearing pants, a shirt, ballistic plate-carrier vest, and backpack, all in a multicam-pattern (that is, a particular camouflage pattern print), with distinctive military morale patches on the front of the vest, as well as green kneepads and brown tactical gloves with black, molded plastic knuckles, as depicted in the image below:



2.       **JOSEPH DANIEL HUTCHISON III**

17.       WFO also posted to the Internet a BOLO for another individual (at the time referred to as UNSUB #320), depicted below:



18.       On or about April 14, 2021, I conducted an interview with a witness ("Witness-3"), who is a law enforcement officer from the Lakeland, Florida area, and who is familiar with the families of JONATHAN POLLOCK and DOOLIN, as well as a gun shop in Lakeland, Florida that is operated by the Pollock family. I showed Witness-3 pictures of UNSUB #320 from the January 6, 2021 breach of the Capitol, including the image depicted below and the image labelled "AFO A" in paragraph 17:



8

I also showed Witness-3 the following publicly available social media posts by a relative of JONATHAN POLLOCK and OLIVIA POLLOCK, which based on my review of video footage from the January 6, 2021 breach of the Capitol, I believe depicts HUTCHINSON and DOOLIN:



Witness-3 identified the individual circled in grey in those pictures as HUTCHINSON, who works at the Pollock family's gun shop in Lakeland, Florida.

19.     Based on my review of publicly available video footage, USCP surveillance footage, and BWC footage, I have observed that, on January 6, 2021, HUTCHINSON was wearing a gray hooded sweatshirt, a tan baseball cap, and a tan/camouflage ballistic plate-carrier vest with a distinctive patch on the front, which is identical to one of the patches on JONATHAN POLLOCK's vest.

**3.     JOSHUA CHRISTOPHER DOOLIN**

20.     I showed images of another individual, who, based on my review of publicly available video footage, USCP surveillance footage, and BWC footage, I observed was often in

the vicinity of and interacted with JONATHAN POLLOCK and HUTCHINSON on January 6, 2021, to Witness-3, including the image depicted below:



Witness-3 identified the individual in the green baseball cap as DOOLIN.

21.     On or about April 14, 2021, I interviewed another law enforcement officer from the Lakeland, Florida area ("Witness-4").  Witness-4 is familiar with the Doolin family. I showed the images described in paragraph 20 to Witness-4, who confirmed that the individual in those pictures was DOOLIN.

22.     I have also reviewed publicly available social media posts by a relative of JONATHAN POLLOCK and OLIVIA POLLOCK, which include photographs of individuals captioned with the names "Jonathan," "Olivia," and/or "Josh." [1]  I have compared the publicly available video footage, USCP surveillance footage, and BWC footage from January 6, 2021 to these social media posts and believe that the "Jonathan," "Olivia," and "Josh" referenced in the social media posts appear in the footage from January 6, 2021 and that those individuals are JONATHAN POLLOCK, OLIVIA POLLOCK, and DOOLIN.

---

[1] These images were posted by a different relative than the individual described in paragraph 18.

10

23.     Based on my review of publicly available video footage, USCP surveillance footage, and BWC footage, I have observed that, on January 6, 2021, DOOLIN was wearing a tan jacket, a plaid shirt, and a green baseball cap.

**4.     MICHAEL STEVEN PERKINS**

24.     I have also identified another individual, who, based on my review of publicly available video footage, USCP surveillance footage, and BWC footage, I observed was often in the vicinity of and interacted with JONATHAN POLLOCK, HUTCHINSON, and DOOLIN on January 6, 2021, who is standing behind DOOLIN in the picture in paragraph 20 and depicted in the picture below:



25.     I have reviewed a driver's license photograph of PERKINS and believe that the individual depicted in the image in paragraph 24 is PERKINS.  Additionally, FBI agents have conducted surveillance of the residence listed on PERKINS's driver's license, which is near Lakeland, Florida, and observed an individual who appeared to be PERKINS travel with a woman who was similar in appearance to the driver's license photograph of PERKINS's wife (who is also visible in social media posts and BWC video footage from January 6, 2021) from

11

the residence to Lakeland, Florida.  The agents who conducted the surveillance have reviewed images of the individual pictured in paragraph 24, and believe that that individual is PERKINS.

26.     Based on my review of publicly available video footage, USCP surveillance footage, and BWC footage, I have observed that, on January 6, 2021, PERKINS was wearing a black jacket, a black knit hat with yellow insignia, and a blue and white neck gaiter.

**5.     OLIVIA MICHELE POLLOCK**

27.     I have also identified another individual, who, based on my review of publicly available video footage, USCP surveillance footage, and BWC footage, I observed was often in the vicinity of and interacted with JONATHAN POLLOCK, HUTCHINSON, DOOLIN, and PERKINS on January 6, 2021, depicted below:



28.     I showed photos of that individual, including the photographs in paragraph 27, to Witness-3.  Witness-3 identified that individual as a sibling of JONATHAN POLLOCK, although Witness-3 did not recall her first name.

29.     As discussed in paragraph 22, I have also reviewed publicly available social media posts by a relative of JONATHAN POLLOCK and OLIVIA POLLOCK, which include photographs of individuals captioned with the names "Jonathan," "Olivia," and/or "Josh."  I have

compared the publicly available video footage, USCP surveillance footage, and BWC footage from January 6, 2021 to these social media posts and believe that the "Jonathan," "Olivia," and "Josh" referenced in the social media posts appear in the footage from January 6, 2021 and that those individuals are JONATHAN POLLOCK, OLIVIA POLLOCK, and DOOLIN.

30.     I have also reviewed driver's license photograph of OLIVIA POLLOCK, and believe that the individual with the green headband depicted in the images in paragraph 27 is OLIVIA POLLOCK.  The residence listed on OLIVIA POLLOCK's driver's license is the same address in Lakeland, Florida as is listed on JONATHAN POLLOCK's driver's license.

31.     A particular phone number with an 863 area code – that is, the area code assigned to the Lakeland, Florida area – is associated with a Google account that is registered in the name "Olivia Pollock."  According to records obtained through a search warrant which was served on Verizon Wireless, on January 6, 2021, that 863 phone number was identified as having utilized a cell site consistent with providing service to a geographic area that includes the immediate vicinity and/or interior of the United States Capitol building.

32.     Based on my review of publicly available video footage, USCP surveillance footage, and BWC footage, I have observed that, on January 6, 2021, OLIVIA POLLOCK was wearing a black long-sleeved shirt with a white flag insignia, a green headband, and a tan ballistic plate-carrier vest with distinctive patches on the front.

**B.**  **The Defendants' Conduct on January 6, 2021**

**1.**     **1:56 – 1:57 p.m. – JONATHAN POLLOCK and HUTCHINSON**

33.     Based on my review of BWC and other publicly available video, I have observed the following:

13

a.    Between approximately 1:56 p.m. and 1:57 p.m. on January 6, 2021,
numerous rioters were at the police line protecting the west side of the Capitol, with low metal
fences separating the crowd and the police officers, along a set of steps.  The following chart,
overlaid over a satellite photo of the Capitol, indicates the approximate location of JONATHAN
POLLOCK, HUTCHINSON, DOOLIN, PERKINS, OLIVIA POLLOCK and two of their
associates ("Associate-2" and "Associate-5"), during that time period:



b.    At approximately 1:56 p.m., JONATHAN POLLOCK and Associate-2
each charge towards the line of police officers, brandishing flagpoles, as depicted below:[2]

---

[2] Throughout this affidavit, JONATHAN POLLOCK is notated in green, HUTCHINSON is
noted in grey, Associate-2 is notated in orange, DOOLIN is notated in maroon, PERKINS is
notated in dark blue, Associate-5 is notated in red, and OLIVIA POLLOCK is notated in light
blue, consistent with the colors in the chart above..

14





     c.    Officers wrestle the poles away from JONATHAN POLLOCK and

Associate-2, causing JONATHAN POLLOCK to fall backwards into the crowd, as depicted

below.



d.      JONATHAN POLLOCK is helped to his feet by HUTCHINSON and then charges at the fence, throwing his shoulder into the fence and pushing it forward, as depicted in the images below.  A male voice, which, based on comparisons with other BWC video, I believe is JONATHAN POLLOCK's, can be heard screaming "Let's Go!"



A moment later, HUTCHINSON and Associate-2, along with other rioters, can be seen grabbing the fence that JONATHAN POLLOCK pushed forward and pulling it away, providing rioters with unobstructed access to the line of police officers.



       e.      Once the metal fencing is pulled back into the crowd, JONATHAN POLLOCK charges the police line, jumping over other rioters to attack police officers.

17



f.      JONATHAN POLLOCK grabs one officer – A.M. – around his[3] waist and

pulls A.M. down the steps.  Another officer – M.L. – goes to assist A.M. and is pulled down the

steps as well.  All three fall to the ground.

---

[3] Unless otherwise stated, for the safety of victims and witnesses, victims and confidential
sources of information are referred to using male pronouns (regardless of gender) and
conversations about victims and confidential sources of information have been altered as
necessary to reflect male pronouns.





      g.    JONATHAN POLLOCK then stands up and knees M.L, who is kneeling

on the ground, near M.L.'s face.

19



h.      M.L. stands up and JONATHAN POLLOCK punches M.L. in the face.



i.      JONATHAN POLLOCK pivots and punches another police officer in the face, then pushes that officer to the ground by holding the officer's neck, in a choking action.

 

j.      Another officer strikes JONATHAN POLLOCK and throws him down,

after which HUTCHINSON helps JONATHAN POLLOCK recover to his feet.



**2.      2:04 p.m. – JONATHAN POLLOCK, HUTCHINSON, DOOLIN, PERKINS**

34.     Based on my review of BWC and other publicly available video, I have observed

the following:

21

a.      At approximately 2:04 p.m. on January 6, 2021 the metal barriers

described in paragraph 33 had been overrun by rioters, and the crowd was now held back from

the Capitol building by a line of police officers with riot shields.  The following chart, overlaid

over a satellite photo of the Capitol, indicates the approximate location of JONATHAN

POLLOCK, HUTCHINSON, DOOLIN, PERKINS, OLIVIA POLLOCK, Associate-2, and

Associate-5, during that time period:



b.      HUTCHINSON, pushed from behind by PERKINS and Associate-5,

charges at the line of police officers, squares-off in a fighting stance, and begins directing

punches at the faces of officers in the line.







     c.     Meanwhile, JONATHAN POLLOCK and Associate-2 run towards the line of officers. Associate-2 is holding a flagpole, which he uses to push other rioters out of his way. DOOLIN follows Associate-2 partway up the steps and retrieves the flagpole after Associate-2 drops it. JONATHAN POLLOCK seizes a riot shield that a police officer is holding. JONATHAN POLLOCK and the officer engage in a tug-o-war with the shield for several seconds, until JONATHAN POLLOCK pulls the officer down the steps, breaks the officer's grasp, and takes the shield.







        d.      JONATHAN POLLOCK, pushed from behind by two other rioters, and holding the riot shield in front of himself,[4] then charges up the steps and slams into the police line.  DOOLIN, bracing a flagpole on his shoulder, advances up the steps, pointing the end of the flagpole at the line of officers.

---

[4] The riot shield has the insignia of the USCP on it.







e.   It appears that DOOLIN is turned back by chemical spray and drops the flagpole.  PERKINS then picks up the flagpole dropped by DOOLIN and throws it in the direction of JONATHAN POLLOCK and the line of police officers.



      f.      A police officer is pulled into the crowd of rioters at the base of the steps. As several other police officers rush into the crowd to assist the officer, PERKINS picks a flagpole up off of the ground.  PERKINS thrusts the flagpole into the chest of a police officer – A.P. – who was running to assist the officer in the crowd.



      g.      PERKINS then raises the flagpole over his head, brings the flagpole down in the direction of another officer, and appears to strike that officer in the back or the back of the head.

 

3.    **2:11 – 2:12 p.m. – JONATHAN POLLOCK, HUTCHINSON, OLIVIA POLLOCK**

35.    Based on my review of BWC and other publicly available video, I have observed the following:

a.    By approximately 2:11 p.m., on January 6, 2021, the crowd had calmed somewhat and a line of police officers still stood at the top of the steps on the west side of the Capitol building.  The following chart, overlaid over a satellite photo of the Capitol, indicates the approximate location of JONATHAN POLLOCK, HUTCHINSON, and OLIVIA POLLOCK, during that time period:



b.      At approximately 2:11 p.m., JONATHAN POLLOCK and

HUTCHINSON charge at the line of officers.



c.      JONATHAN POLLOCK grapples with an officer – B.R. -- and swings his

right arm towards B.R.'s face, simultaneously with a flagpole swung by another rioter.  B.R.

covers his face, turns away, and falls back behind the line of other officers.



d.   HUTCHINSON kicks at the line of officers.





e.      Meanwhile, JONATHAN POLLOCK seizes a riot shield[5] held by a police

officer and wrestles the riot shield away from the officer.

---

[5] The riot shield has the insignia of the USCP on it.



f.      With HUTCHINSON pushing and supporting him from behind,

JONATHAN POLLOCK then raises the shield over his head and thrusts the bottom edge into an

officer's throat or face.



   g.    JONATHAN POLLOCK then thrusts the shield forward at another officer

– J.G. – who is able to deflect the shield with his hands.



   h.    Another officer recovers the riot shield from JONATHAN POLLOCK,

who, along with HUTCHINSON, retreats into the crowd of rioters.

   36.    Based on my review of BWC and other publicly available video, I have observed

the following:

a.      At approximately 2:12 p.m., immediately following the events described

in paragraph 35,  police officers began moving down the steps on the west side of the Capitol

building, pushing rioters back.

b.      HUTCHINSON advances toward the police officers, despite another

demonstrator holding a flagpole in his way.  HUTCHINSON, followed by OLIVIA POLLOCK

(who is carrying a flagpole with an American flag), steps forward, and punches at an officer who

has stumbled.

 

c.      HUTCHINSON then grabs the jacket sleeve of another officer and throws

the officer out of his way.



  d. As the officers continue to advance, another rioter charges at the line of officers, between OLIVIA POLLOCK and the officer closest to her.  That rioter is pushed aside. Two police officers – S.S. and B.B. --  attempt to pass HUTCHINSON and OLIVIA POLLOCK, moving in the direction of an officer who is deeper in the crowd of rioters.  OLIVIA POLLOCK engages with S.S., wraps up his arm and baton, and appears to attempt to strip the baton from S.S.



  e. OLIVIA POLLOCK and HUTCHINSON then move towards B.B who is moving in the direction of the officer who is farther out in the crowd.  HUTCHINSON blocks

B.B.'s path; B.B. raises his arm to push OLIVIA POLLOCK and HUTCHINSON back as he

passes, while S.S. pushes towards OLIVIA POLLOCK with his baton.  OLIVIA POLLOCK

loses her balance.

     f.  OLIVIA POLLOCK regains her balance and advances back at S.S., with

her hands raised in a fighting gesture.  She reaches out and strikes at S.S. with her right hand and

elbows him in the chest, after which she appears to again attempt to strip S.S.'s baton from him.






**4.       2:58 p.m. – JONATHAN POLLOCK**

37.       Based on my review of BWC and other publicly available video, I have observed

the following:

a.       By at least 2:55 p.m., JONATHAN POLLOCK, DOOLIN, PERKINS, and

OLIVIA POLLOCK had relocated closer to the Capitol building and were now present on the

Upper West Terrace.  The following chart, overlaid over a satellite photo of the Capitol, indicates

the approximate location of JONATHAN POLLOCK, DOOLIN, PERKINS, and OLIVIA

POLLOCK, during that time period:



b.       At approximately 2:58 p.m. police officers were stationed on the bleachers

on the Upper West Terrace.  Several officers were transporting someone who had been detained

up the bleacher stairs.  One officer – A.S.--  is facing those officers and the stairs, with his back

to the crowd of rioters.  JONATHAN POLLOCK, DOOLIN, PERKINS, and OLIVIA

POLLOCK were standing on the ledge of the Upper West Terrance, just below A.S.

39

JONATHAN POLLOCK, DOOLIN, and OLIVIA POLLOCK are yelling at the officers and at the crowd.  DOOLIN has zip tie handcuffs tucked in his belt and a riot-control chemical irritant canister, which appears to belong to law enforcement, slung over his shoulder (notated in yellow).



c.      JONATHAN POLLOCK yells "Let's go," then climbs onto the front of the bleachers, grabs A.S. by the shoulders, and attempts to pull him over the metal railing at the front of the bleachers to the floor of the terrace below.



d.     JONATHAN POLLOCK falls backwards off the railing, back onto the

terrace.  JONATHAN POLLOCK begins screaming and pointing at the police officers.

DOOLIN also begins screaming at POLLOCK and pointing at the officers.  Some of their

screaming is inaudible, but I noted them shouting, "We didn't come all this way just to stand

here!", and "We didn't come this far just to push back the cops."

 

**5.     4:29 – 4:46 p.m. – JONATHAN POLLOCK**

38.     Based on my review of BWC, U.S. Capitol surveillance video, and other publicly available video, I have observed the following:

a.      Following the events described in paragraph 37, both JONATHAN POLLOCK and DOOLIN relocated to the vicinity of the terrace on the west side of the Capitol building where a stage for the Presidential Inauguration was being constructed (the "Lower West Terrace").  JONATHAN POLLOCK remained in that area until at least 5:00 p.m.  The following chart, overlaid over a satellite photo of the Capitol, indicates the approximate location of JONATHAN POLLOCK and DOOLIN during that time period:



b.      Beginning at at least 4:20 p.m., JONATHAN POLLOCK  and DOOLIN were positioned close to the entrance to a passageway that connects the Lower West Terrace and the interior of the U.S. Capitol building (the "Tunnel"), with JONATHAN POLLOCK closer to the entrance holding a riot shield, and DOOLIN farther from the entrance, carrying both a chemical irritant canister and a riot shield.





      c.      At approximately 4:29 p.m., another rioter picks up a USCP riot shield

from the ground at the entrance to the Tunnel and passes it behind him to JONATHAN

POLLOCK.  JONATHAN POLLOCK picks up the shield and positions himself at the entrance

to the Tunnel.



d.      At approximately 4:30 p.m., as others yell for help for a rioter who is in distress and unconscious, JONATHAN POLLOCK picks up an additional USCP riot shield from the ground and gives it to another rioter.



e.      For several minutes, starting at approximately 4:32 p.m., while other

rioters thrust and throw objects, such as poles and projectiles, at the line of police officers in the

Tunnel, JONATHAN POLLOCK slams and pushes a riot shield into the line of officers, pinning

the officers' shields and preventing them from defending against the attacks.







     f.     JONATHAN POLLOCK remained positioned with the riot shield at the entrance to the Tunnel, blocking officers from advancing out of the Tunnel, until at least 4:46 p.m.

## CONCLUSION

39.     Based on the foregoing, your Affiant submits that there is probable cause to believe that:

     a.     **JONATHAN DANIEL POLLOCK**

     i.     JONATHAN DANIEL POLLOCK violated 18 U.S.C. §§ 111(a)(1) and (b), and 2 (Assaulting, Resisting, or Impeding Certain Officers or Employees), which make it unlawful to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in Section 1114 of Title 18 while engaged in or on account of the performance of official duties, or aid, abet, counsel, command, induce, or procure the commission of such offense, and punish the commission of such acts using a deadly or dangerous weapon.  For purposes of Section 111 of Title 18, United States Capitol Police Officers constitute persons designated in Section 1114 of Title 18.

     ii.     JONATHAN DANIEL POLLOCK violated 18 U.S.C. § 641 (Theft of Government Property), which makes it a crime for a person to embezzle, steal, purloin, or knowingly convert to his use or the use of another, or without authority, sell, convey or dispose of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or receive, conceal, or retain the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted.

47

   iii.  JONATHAN DANIEL POLLOCK violated 18 U.S.C. §

1752(a)(1), (2), and (4) (Restricted Building or Grounds), which makes it a crime to (1)

knowingly enter or remain in any restricted building or grounds without lawful authority to do;

and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government

business or official functions, engage in disorderly or disruptive conduct in, or within such

proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes

or disrupts the orderly conduct of Government business or official functions; and (4) knowingly

engages in any act of physical violence against any person or property in any restricted building

or grounds; or attempts or conspires to do so.  For purposes of Section 1752 of Title 18, a

"restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or

grounds where the President or other person protected by the Secret Service, including the Vice

President, is or will be temporarily visiting; or any building or grounds so restricted in

conjunction with an event designated as a special event of national significance.

   iv.  JONATHAN DANIEL POLLOCK violated 40 U.S.C.

§ 5104(e)(2)(E) and (F) (Violent Entry and Disorderly Conduct), which makes it a crime to

willfully and knowingly (E) obstruct, or impede passage through or within, the Grounds or any

of the Capitol Buildings; and (F) engage in an act of physical violence in the Grounds or any of

the Capitol Buildings.

  **b.**  **<u>JOSEPH DANIEL HUTCHINSON III</u>**

   i.  JOSEPH DANIEL HUTCHINSON III violated 18 U.S.C. §§

111(a)(1), and 2 (Assaulting, Resisting, or Impeding Certain Officers or Employees), which

make it unlawful to forcibly assault, resist, oppose, impede, intimidate, or interfere with any

person designated in Section 1114 of Title 18 while engaged in or on account of the performance

of official duties, or aid, abet, counsel, command, induce, or procure the commission of such

offense, and punish the commission of such acts.  For purposes of Section 111 of Title 18,

United States Capitol Police Officers constitute persons designated in Section 1114 of Title 18.

      ii.      JOSEPH DANIEL HUTCHINSON III violated 18 U.S.C. §

1752(a)(1), (2), and (4) (Restricted Building or Grounds), which makes it a crime to (1)

knowingly enter or remain in any restricted building or grounds without lawful authority to do;

and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government

business or official functions, engage in disorderly or disruptive conduct in, or within such

proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes

or disrupts the orderly conduct of Government business or official functions; and (4) knowingly

engages in any act of physical violence against any person or property in any restricted building

or grounds; or attempts or conspires to do so.  For purposes of Section 1752 of Title 18, a

"restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or

grounds where the President or other person protected by the Secret Service, including the Vice

President, is or will be temporarily visiting; or any building or grounds so restricted in

conjunction with an event designated as a special event of national significance.

      iii.      JOSEPH DANIEL HUTCHINSON III violated 40 U.S.C.

§ 5104(e)(2)(F) (Violent Entry and Disorderly Conduct), which makes it a crime to willfully and

knowingly (F) engage in an act of physical violence in the Grounds or any of the Capitol

Buildings.

c. **JOSHUA CHRISTOPHER DOOLIN**

i. JOSHUA CHRISTOPHER DOOLIN violated 18 U.S.C. §§ 111(a)(1) and (b) (Assaulting, Resisting, or Impeding Certain Officers or Employees), which make it unlawful to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in Section 1114 of Title 18 while engaged in or on account of the performance of official duties, and punish the commission of such acts using a deadly or dangerous weapon. For purposes of Section 111 of Title 18, United States Capitol Police Officers constitute persons designated in Section 1114 of Title 18.

ii. JOSHUA CHRISTOPHER DOOLIN violated 18 U.S.C. § 1752(a)(1), (2), and (4) (Restricted Building or Grounds), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; and (4) knowingly engages in any act of physical violence against any person or property in any restricted building or grounds; or attempts or conspires to do so. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

iii.      JOSHUA CHRISTOPHER DOOLIN violated 40 U.S.C.

§ 5104(e)(2)(F) (Violent Entry and Disorderly Conduct), which makes it a crime to willfully and

knowingly (F) engage in an act of physical violence in the Grounds or any of the Capitol

Buildings.

      **d.**    **MICHAEL STEVEN PERKINS**

i.      MICHAEL STEVEN PERKINS violated 18 U.S.C. §§ 111(a)(1)

and (b), and 2 (Assaulting, Resisting, or Impeding Certain Officers or Employees), which make

it unlawful to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person

designated in Section 1114 of Title 18 while engaged in or on account of the performance of

official duties, or aid, abet, counsel, command, induce, or procure the commission of such

offense, and punish the commission of such acts using a deadly or dangerous weapon.  For

purposes of Section 111 of Title 18, United States Capitol Police Officers constitute persons

designated in Section 1114 of Title 18.

ii.      MICHAEL STEVEN PERKINS violated 18 U.S.C. § 1752(a)(1),

(2), and (4) (Restricted Building or Grounds), which makes it a crime to (1) knowingly enter or

remain in any restricted building or grounds without lawful authority to do; and (2) knowingly,

and with intent to impede or disrupt the orderly conduct of Government business or official

functions, engage in disorderly or disruptive conduct in, or within such proximity to, any

restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the

orderly conduct of Government business or official functions; and (4) knowingly engages in any

act of physical violence against any person or property in any restricted building or grounds; or

attempts or conspires to do so.  For purposes of Section 1752 of Title 18, a "restricted building"

51

includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the

President or other person protected by the Secret Service, including the Vice President, is or will

be temporarily visiting; or any building or grounds so restricted in conjunction with an event

designated as a special event of national significance.

        iii.        MICHAEL STEVEN PERKINS violated 40 U.S.C.

§ 5104(e)(2)(F) (Violent Entry and Disorderly Conduct), which makes it a crime to willfully and

knowingly (F) engage in an act of physical violence in the Grounds or any of the Capitol

Buildings.

        e.        **OLIVIA MICHELE POLLOCK**

        i.        OLIVIA MICHELE POLLOCK violated 18 U.S.C. §§ 111(a)(1)

(Assaulting, Resisting, or Impeding Certain Officers or Employees), which make it unlawful to

forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in

Section 1114 of Title 18 while engaged in or on account of the performance of official duties.

For purposes of Section 111 of Title 18, United States Capitol Police Officers constitute persons

designated in Section 1114 of Title 18.

        ii.        OLIVIA MICHELE POLLOCK violated 18 U.S.C. § 1752(a)(1),

(2), and (4) (Restricted Building or Grounds), which makes it a crime to (1) knowingly enter or

remain in any restricted building or grounds without lawful authority to do; and (2) knowingly,

and with intent to impede or disrupt the orderly conduct of Government business or official

functions, engage in disorderly or disruptive conduct in, or within such proximity to, any

restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the

orderly conduct of Government business or official functions; and (4) knowingly engages in any

act of physical violence against any person or property in any restricted building or grounds; or attempts or conspires to do so.  For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

                    iii.         OLIVIA MICHELE POLLOCK violated 40 U.S.C. § 5104(e)(2)(F) (Violent Entry and Disorderly Conduct), which makes it a crime to willfully and knowingly (F) engage in an act of physical violence in the Grounds or any of the Capitol Buildings.

Timothy D. Taylor
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 25th day of June 2021.

G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE